USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/04/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

INDIA GLOBALIZATION CAPITAL, INC.,                    :
                                                       :
                                    Plaintiff,         :
                                                       :         21-CV-1131 (VEC)
                       -against-                       :
                                                       :         OPINION AND ORDER
APOGEE FINANCIAL INVESTMENTS, INC.,                    :
                                                       :
                                    Defendant.         :

------------------------------------------------------------X


------------------------------------------------------------X

APOGEE FINANCIAL INVESTMENTS, INC.,                    :
JOHN R. CLARKE,                                        :
                                                       :
                          Counterclaim-Plaintiffs,     :
                                                       :
                       -against-                       :
                                                       :
RAMACHANDRA MUKUNDA, INDIA                             :
GLOBALIZATION CAPITAL, INC.,                           :
                                                       :
                        Counterclaim-Defendants.       :

------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

In these consolidated cases, India Globalization Capital, Inc. ("IGC") and Apogee

Financial Investments, Inc. ("Apogee") are suing each other and individuals affiliated with each

company for breach of contract and related claims as a result of a failed business deal.[1]  Pursuant

to Rule 12(b)(6) of the Federal Rules of Civil Procedure, IGC and Ramachandra Mukunda

(IGC's principal) moved to dismiss most of the counterclaims filed by Apogee and John Clarke

---

[1]       The counterclaim was initially brought as a separate case. *See Apogee Fin. Invs., Inc. v. Mukunda*, 21-CV-
3809.  On May 3, 2021, the Undersigned consolidated the two cases under Docket No. 21-CV-1131.  Endorsement,
Dkt. 16.  Apogee and Clarke amended their counterclaims in response to an initial motion to dismiss.  *See* Not. of
Mot., Dkt. 25; Amend. Counterclaim, Dkt. 31.  The Amended Counterclaim, which is styled as an amended
complaint, is the operative pleading.

(the former principal of an entity that was wholly-owned by Apogee).[2]  For the reasons discussed below, the motion is GRANTED in part and DENIED in part.

## BACKGROUND[3]

IGC is a publicly traded corporation listed on the New York Stock Exchange.  Amend. Counterclaim, Dkt. 31 ¶ 10.  IGC sought to acquire Midtown Partners and Co., LLC ("Midtown"), then a registered broker dealer wholly owned by Apogee.  *Id.* ¶¶ 18–19.  On December 18, 2014, Apogee and IGC signed a Purchase Agreement.  *See* Purchase Agreement, Dkt. 37-1.  Pursuant to the Purchase Agreement, IGC agreed to purchase Midtown in two tranches.  Amend. Counterclaim ¶¶ 21–22.  In the first tranche, to be completed on December 18, 2014, IGC would acquire 24.9% of Midtown in exchange for 1.2 million shares of IGC common and unrestricted stock.  Purchase Agreement ¶ 1(a)(ii).  In the second tranche, to be completed by June 30, 2015, IGC would acquire the remaining interest in Midtown and Apogee would receive an additional 700,000 shares of IGC stock.  Amend. Counterclaim ¶ 22.  The Purchase Agreement required IGC to appoint Clarke, then the CEO and principal of Midtown, as IGC's interim chief financial and accounting officer and chief funding officer.  Purchase Agreement ¶ 5; Amend. Counterclaim ¶ 29.

Counterclaim-Plaintiffs contend that IGC breached the Purchase Agreement.  Although IGC was obligated to transfer 1.2 million shares to Apogee on December 18, 2014, according to

---

[2]     The Court will refer to Apogee and Clarke collectively as "Apogee/Clarke" or "Counterclaim-Plaintiffs." Similarly, the Court will refer to IGC and Mukunda collectively as "IGC/Mukunda" or "Counterclaim-Defendants."

[3]     The facts are taken from the Amended Counterclaim and assumed to be true for purposes of this motion. Although many of the facts align between IGC's Complaint (Dkt. 1) and the Amended Counterclaim (Dkt. 31), the parties disagree on who breached the Purchase Agreement, including whether the parties satisfied various conditions precedent to performing certain obligations under the contract.  Additionally, IGC claims that Apogee failed to repay a $70,000 loan to IGC, *see* Compl., Dkt. 1 ¶¶ 57–58, and Clarke claims that Mukunda/IGC failed to convey 200,000 shares of IGC stock to him, *see* Amend. Counterclaim ¶¶ 96, 99.

Apogee, IGC did not issue the shares until February 3, 2015, Amend. Counterclaim ¶ 33, and IGC put a stop order on 500,000 of the shares on the day they were issued, preventing their transfer to Apogee.  *Id.* ¶ 34.  Counterclaim-Plaintiffs allege that those shares were never transferred to Apogee as required.  *Id.* ¶ 110.  With respect to the remaining 700,000 shares due to Apogee in the first tranche, Apogee did not receive them until 2015, more than four months after they were supposed to have been transferred.  *Id.* ¶ 39.  Nonetheless, on December 23, 2014, IGC filed a Form 8-K with the SEC falsely stating that it had issued 1,200,000 shares to Apogee and had received 24.9% ownership of Midtown in return.  *Id.* ¶ 30.

On February 12, 2015, IGC filed a Form 10-Q with the SEC that included an electronic signature of Clarke even though he had not authorized IGC to use his signature.  Amend. Counterclaim ¶¶ 46–47.   In April 2016, Clarke demanded payment from IGC for the use of his signature.  *Id.* ¶ 47.  Counterclaim-Defendants agreed to give Clarke 200,000 shares of IGC for his work as IGC's interim treasurer and chief financial officer (the "Shares Agreement").  *Id.* ¶ 48.  In December 2018, after Clarke promised to introduce Mukunda to a cannabis business,[4] Mukunda promised that he and IGC would transfer to Clarke the 200,000 IGC shares that he was owed.  *Id.* ¶¶ 68–70.  Clarke never received the shares.  *Id.* ¶ 50.

The failed business deal with IGC purportedly had catastrophic results for both Apogee and Clarke.  According to the Amended Counterclaim, Apogee had to terminate its operations; Midtown lost its status as a registered broker dealer; Clarke lost his job; Clarke and Midtown were sued for unpaid rent by Midtown's landlord; and Clarke was turned down for two similar jobs.  *Id.* ¶¶ 62–83.

---

[4]     Mukunda was allegedly interested in setting up Midtown as the first broker dealer dedicated to the cannabis industry.  Amend. Counterclaim ¶¶ 15–19.

On February 8, 2021, this litigation began when IGC sued Apogee for breach of contract. Compl., Dkt. 1. Apogee and Clarke then sued IGC and Mukunda for breach of contract and a number of other related claims. Compl., 21-CV-3809, Dkt. 1. After the cases were consolidated, *see* Endorsement, Dkt. 16, and IGC/Mukunda moved to dismiss, Apogee and Clarke amended their counterclaims, *see* Not. of Mot., Dkt. 25; Amend. Counterclaim, Dkt. 31. Counterclaim-Defendants moved to dismiss most of the amended counterclaims, and Counterclaim-Plaintiffs opposed. Notice of Mot., Dkt. 36; Resp., Dkt. 40.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a counterclaim "must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). A counterclaim "does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted). The Court accepts all factual allegations in the counterclaim as true and draws all reasonable inferences in the light most favorable to the counterclaim-plaintiff. *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013). The Court is not required, however, "to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). On a motion to dismiss, the Court may consider any "written instrument attached to [the counterclaim] as an exhibit or any statements or documents incorporated in it by reference" as well as materials integral to the counterclaim-plaintiffs' claims. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47, 48 (2d Cir. 1991).

**DISCUSSION**

### I.      The Promissory Fraud Claim Is Dismissed with Prejudice

Counterclaim-Plaintiffs contend that Counterclaim-Defendants committed promissory fraud because they entered into the Purchase Agreement without any intention to perform. Amend. Counterclaim ¶ 88.  In their response brief, Apogee/Clarke request to withdraw this claim without prejudice.  Resp. at 1, 10.  Counterclaim-Defendants argue that the claim should be dismissed with prejudice.  Reply, Dkt. 41 at 1.

Counterclaim-Plaintiffs included a fraud claim in their original counterclaim.  *See* Orig. Counterclaim, Dkt. 13 ¶ 65 (alleging that IGC committed fraud when it failed to advise IGC and Mukunda that it "had no intention in December 2014 to perform the Purchase Agreement . . ."). In response to Counterclaim-Defendants' original motion to dismiss, *see* Not. of Mot., Dkt. 25, Counterclaim-Plaintiffs amended their fraud claim, *see* Amend. Counterclaim ¶¶ 86–93.[5]  By requesting to withdraw the promissory claim without prejudice, Apogee/Clarke are seeking to preserve their right to bring this claim for a third time.  But Counterclaim-Plaintiffs have provided no arguments or other justifications as to why the Court should permit them to withdraw this claim without prejudice, and they have provided no indication as to what additional facts they would allege or any other revisions they would make to the claim.[6]  With no way to assess whether Counterclaim-Plaintiffs could state a claim for promissory fraud, and

---

[5]      The fact that the original counterclaim labeled the cause of action as "fraud" and the amended counterclaim labeled the same cause of action as "promissory fraud" is of no moment.  Both causes of action are based on IGC and Mukunda's purported intent not to perform the Purchase Agreement at the time they executed it.  *Compare* Orig. Counterclaim, Dkt. 13 ¶ 65 *with* Amend. Counterclaim ¶ 88.

[6]      In fact, all Counterclaim-Plaintiffs state is that the claim should be withdrawn without prejudice; they provide no additional detail.  *See* Resp., Dkt. 40 at 1 ("With this memorandum, however, the Apogee Parties withdraw Count I in their Amended [Counterclaim] seeking relief under a theory of promissory fraud without prejudice."); *id.* at 10 (requesting that the Court deny the motion to dismiss "except as to Count I in the Apogee Parties' amended [counterclaim], which the Apogee Parties withdraw without prejudice.").

given that they have already amended their counterclaims once in response to Counterclaim-Defendants' arguments, the promissory fraud claim is dismissed with prejudice.[7]

## II.   Counterclaim-Plaintiffs Have Not Stated a Claim for Breach of Contract Against Mukunda

Counterclaim-Plaintiffs allege that Mukunda is personally liable for breach of the Purchase Agreement and the Shares Agreement.  Amend. Counterclaim ¶¶ 98–99.  Mukunda argues that he cannot be held personally liable because he is not a party to either contract.  Mem. of Law, Dkt. 37 at 13.  It is, of course, hornbook law that a person "must be a party to a contract for a claim of breach of that contract to lie . . . ."  *Kamdem-Ouaffo v. Pepsico, Inc.*, No. 14-CV-227, 2015 WL 1011816, at *7 (S.D.N.Y. Mar. 9, 2015); *see also Crabtree v. Tristar Auto. Grp., Inc.*, 776 F. Supp. 155, 166 (S.D.N.Y. 1991).[8]

Counterclaim-Plaintiffs argue that even though he is not a party to the contracts, Mukunda may be held personally liable as the alter ego of IGC.  Resp. at 3–4.  The parties are correct that Maryland law governs this question because IGC was incorporated in Maryland. Resp. at 2–3; Reply at 1.[9]  Under Maryland law, the alter-ego doctrine can be used to pierce the corporate veil only in exceptional circumstances.  *See Roley v. Nat'l Pro. Exch., Inc.*, 474 F. Supp. 3d 708, 726 (D. Md. 2020); *see also Liverpool v. Caesars Balt. Mgmt. Co.*, No. 21-0510,

---

[7]   *See also Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (internal citation omitted) (finding that leave to amend may be properly denied for "repeated failure to cure deficiencies.").

[8]   Mukunda also argues that he cannot be personally liable under the law of agency.  Mem. of Law, Dkt. 37 at 13.  Apogee/Clarke do not contest that argument; instead, Apogee/Clarke argue that they have stated a claim that Mukunda is personally liable under an alter-ego theory.  Resp. at 3–4.  Because Counterclaim-Plaintiffs are not relying on the law of agency to hold Mukunda liable, the Court declines to consider those arguments.

[9]   Because the Court's subject-matter jurisdiction is premised on diversity, the choice of law rules of New York, the forum state, apply.  *See Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997) (internal citation omitted).  Under New York's choice of law rules, the law of the state in which a corporation is incorporated governs the question of whether a corporate veil may be pierced.  *See Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995).

2021 WL 3116106, at *4 (D. Md. July 22, 2021) (internal citation omitted) ("Maryland has a markedly restrictive approach to piercing the corporate veil."); *Hildreth v. Tidewater Equip. Co.*, 378 Md. 724, 735 (2003) (noting that in Maryland, the alter-ego doctrine is applied "with great caution and reluctance").

To pierce the corporate veil under Maryland law, Counterclaim-Plaintiffs would need to allege sufficient facts so that the Court could reasonably infer: (1) that Mukunda had "complete domination, not only of the finances, but of policy and business practice in respect to the transaction so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own;" (2) that "such control [was] used by [Mukunda] to commit fraud or wrong, to perpetrate the violation of the statutory or other positive legal duty, or dishonest and unjust act in contravention of the [counterclaim] plaintiff's legal rights;" and (3) that such "control and breach of duty proximately caused the injury or unjust loss." *Hildreth*, 378 Md. at 735.

Maryland courts analyze several factors to determine whether those three elements have been met.[10]  The factors are:

> (1) whether the corporation is inadequately capitalized, fails to observe corporate formalities, fails to issue stock or pay dividends, or operates without a profit, (2) whether there is commingling of corporate and personal assets, (3) whether there are non-functioning officers or directors, (4) whether the corporation is insolvent at the time of the transaction, and (5) the absence of corporate records.

*Hildreth*, 378 Md. at 735.

---

[10]   *See Hildreth v. Tidewater Equip. Co.*, 378 Md. 724, 735 (2003) (finding that there is "no universal rule as to the specific criteria that courts will consider in determining whether to apply the doctrine" but noting that courts typically consider a series of factors alongside the elements of the doctrine); *Roley v. Nat'l Pro. Exch., Inc.*, 474 F. Supp. 3d 708, 726 (D. Md. 2020) (same).

The facts that Apogee/Clarke allege are relevant only to the first factor, which requires considering, in part, whether the entity "fails to issue stock." *Id*. At issue in this lawsuit is whether IGC failed to convey (1) 1.9 million shares of stock to Apogee as required by the Purchase Agreement and (2) 200,000 shares to Clarke as required by the Shares Agreement. Amend. Counterclaim ¶¶ 20–21, 50. But despite the parties' disputes about whether IGC issued or transferred all of the shares required under the two agreements, neither side contests that IGC had issued at least 700,000 shares by April 2015. *Id.* ¶ 39; Mem. of Law at 11–12. IGC's issuance of hundreds of thousands of shares undercuts the notion that the company failed to issue stock at all — an important factor under Maryland law when determining whether the corporate veil can be pierced. The Amended Counterclaim includes no well-pled facts regarding whether IGC was adequately capitalized, paid dividends, or ever turned a profit. Accordingly, the few facts that are alleged that are relevant cut against an inference that the first factor is present.[11] Counterclaim-Plaintiffs do not allege any facts from which the Court could infer that any of the other factors are present.

Nor do any of the other factual allegations come close to allowing the Court to infer that Mukunda can be held liable as the alter ego of IGC. With respect to whether Mukunda dominated the company, Apogee/Clarke argue that "all interaction by the Apogee Parties in connection with the Purchase Agreement was with Mukunda," *see* Resp. at 4, and that entering the cannabis industry was Mukunda's idea, *see* Amend. Counterclaim ¶¶ 15–17. Apogee/Clarke further plead that Mukunda decided IGC should purchase Midtown so it could show increased capital, *see id.* ¶¶ 18–19, and that Mukunda wanted to go through with the purchase to set up

---

[11]     Moreover, with respect to the portion of the first factor that looks at whether there was a failure to observe corporate formalities, Counterclaim-Plaintiffs allege that the board approved the Shares Agreement, *see* Amend. Counterclaim ¶ 48, suggesting that IGC observed at least some corporate formalities.

Midtown as a broker dealer in the cannabis industry, *see id.* ¶¶ 19, 68, 70.  Those allegations say

nothing about whether Mukunda dominated IGC to the point where it had "no separate mind,

will or existence of its own."  *Hildreth*, 378 Md. at 735.  Mukunda was (and remains) the

President and CEO of IGC, so having and pursuing business ideas was a key part of his job

description.  Moreover, Counterclaim-Plaintiffs do not allege anything about Mukunda's

interactions with board members, other staff, or with shareholders.  In short, there are simply no

factual allegations in the Amended Counterclaim from which the Court can infer that Mukunda

"completely dominated" the company as required to pierce the corporate veil under Maryland

law.

      While there may be some factual allegations remotely related to the second element,[12]

with respect to the third element, there is not a single non-conclusory factual allegation to

support an inference that Mukunda's domination of IGC and breach of his duty to IGC somehow

caused harm to Counterclaim-Plaintiffs.  Amend. Counterclaim ¶¶ 62–64, 74–78, 79, 81–83;

Mem. of Law at 29.

      In short, Counterclaim-Plaintiffs have failed to plead facts from which the Court could

infer that the three elements of the alter-ego doctrine under Maryland law have been satisfied.

The counterclaim for breach of contract against Mukunda is dismissed without prejudice,

however, because Counterclaim-Plaintiffs could conceivably allege facts in a second amended

---

[12]     With respect to the second element, Counterclaim-Plaintiffs contend that "Mukunda engaged in dishonest acts as to Apogee and Clarke."  Resp. at 4.  Apogee alleges that IGC and Mukunda deliberately and materially misrepresented information on two Form 8-Ks to boost the price of IGC shares on the New York Stock Exchange, lied on a Form 10-Q by falsely affixing Clarke's electronic signature to forms filed by IGC with the SEC, and induced Clarke to sign Officer Certificates with the goal of misleading the SEC in an investigation it was conducting. Amend. Counterclaim ¶¶ 30–31, 40–42, 46, 53, 88–91.  At this stage of the proceedings, if the Counterclaim were otherwise adequate, such allegations may, liberally construed, have been sufficient to satisfy the second element.

counterclaim that would support piercing IGC's corporate veil.[13]   Should Apogee seek leave to file a second amended counterclaim, that amended counterclaim must plead sufficient facts from which the Court could reasonably infer that the factors and elements associated with Maryland's alter-ego doctrine have been met.

### III.   Clarke Has Stated a Claim that IGC Breached the Shares Agreement[14]

The parties dispute whether Maryland or New York law applies to Clarke's claim that IGC breached the Shares Agreement.  Mem. of Law at 14–16 (arguing that Maryland law applies); Resp. at 4–6 (contending that New York law applies).  The statute of limitations in New York for breach of contract is six years, *see* N.Y.C.P.L.R. § 213(2), whereas the statute of limitations in Maryland for breach of contract is three years, *see* Md. Code Ann., Cts. & Jud. Proc. § 5-101.  Clarke alleges that the Shares Agreement was breached between April 1, 2016, and July 14, 2016, *see* Amend. Counterclaim ¶¶ 48–50, 53, and he first brought his claim on April 29, 2021, *see* Compl., 21-CV-3809, Dkt. 1 ¶¶ 85, 87, 89, 91.  At first glance, given the respective statute of limitations, choice of law would appear to be dispositive: the claim is timely under New York law and untimely under Maryland law.

On closer examination, however, even under Maryland law, Clarke has adequately alleged that the breach of contract claim is not time-barred.  Clarke argues that the Maryland debt acknowledgment doctrine makes his breach of contract claim timely under Maryland law.  Resp. at 6.  In Maryland, the doctrine of debt acknowledgment allows a debt to be revived even

---

[13]     Unlike the promissory fraud claim, which Counterclaim-Defendants moved to dismiss in their original motion, *see* Not. of Mot., Dkt. 25, the motion to dismiss currently before the Court is the first time that Counterclaim-Defendants have moved to dismiss the breach of contract claims against Mukunda, *see* Not. of Mot., Dkt. 36.  Accordingly, the Court finds it appropriate to afford Counterclaim-Plaintiffs one last opportunity to amend this claim.

[14]     The Amended Counterclaim combines into one breach of contract cause of action both Apogee's claim that IGC and Mukunda breached the Purchase Agreement and Clarke's claim that IGC and Mukunda breached the Shares Agreement.  *See* Amend. Counterclaim ¶¶ 94–106.

after the statute of limitations has run.  *See Jenkins v. Karlton*, 329 Md. 510, 531 (1993)

("Maryland law has long recognized that acknowledgment of a debt barred by limitations

removes the bar to pursuing the remedy."); *McMahan v. Dorchester Fertilizer Co.*, 184 Md. 155,

157 (1944) ("[A] promise to pay a debt on simple contract, after it is barred by the Statute of

Limitations, revives the remedy.").  For the debt to be revived, Clarke must allege facts from

which the Court can reasonably infer that, within the statute of limitations, IGC made an

unconditional promise, acknowledgement, or admission to pay the debt owed to Clarke.  *See*

*Potterton v. Ryland Grp., Inc.*, 289 Md. 371, 375 (1981).  If it is a "clear, distinct, and

unqualified admission" of a preexisting debt, "unaccompanied by any qualification," it can

revive the remedy.  *Hall v. Barlow*, 260 Md. 327, 337 (1971).  But if the promise or

acknowledgement to pay the debt is accompanied by a condition precedent, then the remedy is

not revived.  *Potterton*, 289 Md. at 375; *Crawford v. Richards*, 197 Md. 289, 293 (1951).  The

acknowledgement of the debt does not need to take any particular form.  *See Zayas v. Adcor*

*Indus., Inc.*, No. 16-03193, 2017 WL 4296721, at *5 (D. Md. Sept. 26, 2017) (internal citations

omitted) ("[T]he doctrine of acknowledgement applies when a debtor acknowledges 'debts really

due,' regardless of those debts being due through a written, oral, or implied in fact contract.").

Clarke claims that IGC ratified the Shares Agreement as recently as December 2018

when Clarke asked Mukunda to reassure him that IGC would pay Clarke the 200,000 shares he

was owed and "Mukunda confirmed that he intended to keep IGC's promise to pay Clarke

200,000 shares of IGC's common stock."  Amend. Counterclaim ¶ 70; *see also* ¶¶ 68–69; Resp.

at 6.  There are no allegations that IGC set a condition precedent or otherwise qualified the

debt.[15]  Accordingly, accepting the well-pled allegations in the Amended Counterclaim as true, the December 2018 acknowledgement reset the statute of limitations, moving its expiration to December 2021, well after this claim was filed.

In sum, regardless of which state's law applies,  Clarke's breach of contract claim is timely.  Because expiry of the statute of limitations was the Counterclaim-Defendants' only argument as to why Clarke's claim for breach of the Shares Agreement should be dismissed, the Court finds that Clarke has stated a claim as to this cause of action.  IGC's motion to dismiss Clarke's claim that they breached the Shares Agreement is, therefore, denied.[16]

## IV.  The Motion to Dismiss the Counterclaim Seeking Specific Performance Is Granted

The Counterclaim includes a separate cause of action seeking specific performance of the Purchase Agreement.  Amend. Counterclaim ¶¶ 107–110.  The remedy for breach of contract is designed to protect the non-breaching party's "expectation interest" by putting them in the position they would have occupied absent the breach.  Restatement (Second) of Contracts § 344.  There are two primary remedies for breach of contract: an award of damages or an order for specific performance.  Money damages are the preferred remedy.  *See*, *e.g.*, *United States v. Winstar Corp.*, 518 U.S. 839, 885 (1996) (plurality opinion) ("[D]amages are always the default remedy for breach of contract."); *Sokoloff v. Harriman Ests. Dev. Corp.*, 96 N.Y.2d 409, 415

---

[15]     IGC's 2016 Form 10-K states that the 200,000 shares were granted to Clarke "pending vesting."  *See* 2016 10-K, Dkt. 37-2 at 79.  The Counterclaim does not allege that Mukunda conditioned transferring the shares to Clarke on them vesting.  Amend. Counterclaim ¶¶ 68–70; Resp. at 6.

[16]     As alleged, this counterclaim names Mukunda as a Defendant.  Because Mukunda is not alleged to have signed the Shares Agreement in his personal capacity, for all the reasons discussed in Part II, *supra*, he can only be liable on this claim if Clarke can allege facts from which the Court can reasonably infer that Mukunda is an alter ego of the company.  Even if he fails to so, the Counterclaim can go forward against IGC.

(2001) ("In general, specific performance will not be ordered where money damages would be adequate to protect the expectation interest of the injured party" (cleaned up)).

In considering whether Counterclaim-Plaintiffs have an adequate remedy at law, "the guiding consideration is the difficulty of proving damages with reasonable certainty." *Edge Grp. WAICCS LLC v. Sapir Grp. LLC*, 705 F. Supp. 2d 304, 313 (S.D.N.Y. 2010) (cleaned up); *see also Sokoloff*, 96 N.Y.2d at 415 ("In determining whether money damages would be an adequate remedy, a trial court must consider, among other factors, the difficulty of proving damages with reasonable certainty and of procuring a suitable substitute performance with a damages award.").

Monetary damages are the appropriate remedy for this breach of contract claim. IGC allegedly breached the Purchase Agreement by failing to transfer to Apogee the remaining 1,200,000 shares it was entitled to under the contract. Amend. Counterclaim ¶ 110. IGC is a publicly traded corporation, so the shares are capable of valuation. Accordingly, the amount of money that would put Apogee in the same position it would have been in had the Purchase Agreement not been breached is readily determinable. *See Alpha Cap. Anstalt v. Shiftpixy, Inc.*, 432 F. Supp. 3d 326, 340 (S.D.N.Y. 2020) (holding that damages can be easily determined when the issue is undelivered stock because that stock has a calculable monetary value); *Sharma v. Skarrup Ship Mgmt. Corp.*, 916 F.2d 820, 825 (2d Cir. 1990) ("[W]here the breach involves the deprivation of an item with a determinable market value, the market value at the time of the breach is the measure of the damages.").[17]

---

[17]     Counterclaim-Plaintiffs inexplicably argue that "New York courts routinely award specific performance in cases involving the conveyance of stock in privately held corporations." Resp. at 9 (citing *Vacold LLC v. Cerami*, 545 F.3d 114, 130 (2d Cir. 2008)). That recitation of the law is inapposite because IGC is a publicly traded corporation. Amend. Counterclaim ¶ 10. Moreover, *Vacold* addresses the question of whether equitable remedies are precluded by liquated damages provisions, a question not at issue in this litigation. *Vacold*, 545 F.3d at 130–31.

Apogee argues that specific performance is an appropriate remedy because Paragraph 9(m) of the Purchase Agreement "contains a broad grant of remedies to Apogee," including that "any remedy at law may prove to be inadequate relief."  *See* Resp. at 8 (citing Purchase Agreement ¶ 9(m)).  But courts have found that the inclusion of just that language in a contract does not require an award of specific performance when a remedy at law is so clearly appropriate.  *Alpha*, 432 F. Supp. 3d at 338–39, 343 (finding that a provision stating that a remedy at law for a breach of contract "may be inadequate" is not dispositive and the failure to prove that monetary damages are inadequate was fatal to the non-breaching party's claim for equitable relief).

Accordingly, if Apogee prevails on its breach of contract claim, it has an appropriate remedy at law, making specific performance an inappropriate remedy.[18]  Accordingly, Counterclaim-Defendants' motion to dismiss the counterclaim for specific performance is granted.

## V.   The Counterclaim for Indemnity Does Not State a Claim

Apogee seeks to enforce the indemnity clause in the Purchase Agreement in a variety of ways, including through an award of attorneys' fees for this action.  *See* Amend. Counterclaim

---

Accordingly, although specific performance *may* be an appropriate remedy under certain instances, those circumstances are not present here.

[18]     Some courts have found it premature to address whether specific performance is an appropriate remedy at the motion to dismiss stage because there had not yet been a finding that the contract was breached.  *See, e.g.*, *RJ Cap., S.A. v. Lexington Cap. Funding III, Ltd.*, No. 10-CV-25, 2011 WL 3251554, at *16 (S.D.N.Y. July 28, 2011) (dismissing plaintiff's claim for specific performance without ruling whether specific performance was an applicable remedy to the separately-pled breach of contract claim); *Tierney v. Omnicom Grp. Inc.*, No. 06-CV-14302, 2007 WL 2012412, at *10 (S.D.N.Y. July 11, 2007) (dismissing plaintiff's claim for specific performance without prejudice so that plaintiff retains the right to request specific performance as a remedy for any claims that survive the motion to dismiss).  The Court declines to follow those decisions.  In this matter, the very nature of the breach of contract claim precludes the availability of specific performance, making a ruling on a motion to dismiss appropriate.

14

¶¶ 112–16.  The indemnity clause in the Purchase Agreement requires IGC to indemnify Apogee

for any and all actions incurred relating to:

> (a) any misrepresentation or breach of any representation or warranty made by
> [IGC] in the Transaction Documents or any other certificate, instrument or
> document contemplated hereby or thereby, (b) any breach of any covenant,
> agreement or obligation of the Company contained in the Transaction Documents
> or any other certificate, instrument or document contemplated hereby or thereby
> or (c) any cause of action, suit or claim brought or made against such Indemnitee
> by a third party . . . and arising out of or resulting from the execution, delivery
> performance or enforcement of the Transaction Documents or any other
> certificate, instrument or document contemplated hereby or thereby.

Purchase Agreement ¶ 9(k)(i).  Apogee argues that because part (c) of the indemnity clause

explicitly references third parties, parts (a) and (b) must be referring to first parties such that the

indemnity clause governs disputes between the contracting parties arising from a breach of the

Purchase Agreement itself.  *See* Resp. at 7.

The Court disagrees.  Under New York law,[19] indemnification clauses "must be strictly

construed" to avoid implying obligations that were not in the consideration of the parties.

*Hayners v. Kleinewefers & Lembo Corp.*, 921 F.2d 453, 456 (2d Cir. 1990).  "Absent

*unmistakably clear* language in an indemnification provision that demonstrates that the parties

intended the clause to cover first-party claims, an agreement between two parties to indemnify

each other does not mean that one party's failure to perform gives rise to a claim for

indemnification."  *Lehman XS Tr., Series 2006-GP2 by U.S. Bank Nat'l Assoc. v. GreenPoint

Mortg. Funding, Inc.*, 916 F.3d 116, 125–26 (2d Cir. 2019) (emphasis added) (cleaned up).

---

[19]     New York law applies to this claim because the Purchase Agreement has a New York choice of law
provision.  *See* Purchase Agreement, Dkt. 37-1 ¶ 9(a).

Accordingly, the default presumption in New York is that indemnity clauses cover only third-party claims and do not govern disputes between the contracting parties.[20]

The indemnity clause at issue lacks the "unmistakably clear" language required for it to apply to first parties.  The fact that third parties are referenced in some clauses but not others does not constitute an unmistakably clear indication that the parties intended for those clauses to cover first parties.  *See Parkway Pediatric & Adolescent Med. LLC v. Vitullo*, 72 A.D.3d 1513, 1513 (4th Dep't 2010) (finding that when a "broad indemnification clause in the parties' agreement does not refer to litigation between the parties to the agreement," it is not "'unmistakably clear' that the parties intended that plaintiff must indemnify defendant"); *Hooper Assocs., Ltd. v. AGS Computs, Inc.*, 74 N.Y.2d 487, 492 (1989) (finding that an indemnity clause that encompasses breach of warranty claims and does not reference either first or third parties is not "exclusively or unequivocally referable to claims between the parties themselves or support an inference that defendant promised to indemnify plaintiff for counsel fees in an action on the contract").

Moreover, the second subparagraph of the Indemnity provision of the Purchase Agreement includes notice of claim and assumption of defense provisions.  *See* Purchase Agreement ¶ 9(k)(ii).  The inclusion of such provisions is consistent with an understanding of the parties that the indemnity provisions apply to third-party claims.  *See Goshawk Dedicated Ltd. v. Bank of N.Y.*, No. 06-CV-13758, 2010 WL 1029547, at *8 (S.D.N.Y. Mar. 15, 2010) (noting that when "pertinent provisions include[] a notice-of-claim or assumption-of-defense clause, [that]

---

[20]     A breach of contract action is more appropriate than a convoluted indemnity claim when contracting parties dispute whether the underlying contract has been breached.  *See Xerox State & Loc. Sols., Inc. v. Xchanging Sols. (USA), Inc.*, 216 F. Supp. 3d 355, 364 (S.D.N.Y. 2016) ("Where parties agree to 'indemnify' each other for losses incurred by a breach of contract, where those lo[s]ses do not relate to liability to a third party, the characterization of 'indemnification' is no more than an epithet for recovery for breach of contract.").  For that reason, any application of an indemnity clause to first-party claims must be "unmistakably clear."

would suggest that indemnity was limited to third-party claims"); *In re Refco Sec. Litig.*, 890 F. Supp. 2d 332, 344 (S.D.N.Y. 2012) ("Notice of claim provisions and assumption of defense are relevant indicators of whether third party claims are contemplated."); *Adesso Cafe Bar & Grill, Inc. v. Burton,* 74 A.D.3d 1253, 1254 (2d Dep't 2010) (finding that the conclusion that third-party suits were contemplated is "bolstered" by notice of claim provisions).  Because notice of claim and assumption of defense provisions make little sense when the contracting parties are suing each other,[21] the parties' inclusion of those provisions makes it far from "unmistakably clear" that they intended the indemnity clause to apply to first-party claims.[22]

---

[21]    *See also Hooper Assocs., Ltd. v. AGS Computs., Inc.*, 74 N.Y.2d 487, 492–93 (1989) (internal citation omitted) ("To extend the indemnification clause to require defendant to reimburse plaintiff for attorney's fees in the breach of contract action against defendant would render these provisions meaningless because the requirement of notice and assumption of the defense has no logical application to a suit between the parties.  Construing the indemnification clause as pertaining only to third-party suits affords a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect").

[22]    To support its contention that the indemnity clause unmistakably applies to first-party claims, Apogee cites *Sagittarius Broad. Corp. v. Evergreen Media Corp.*, 243 A.D.2d 325, 326 (1st Dep't 1997).  *See* Resp. at 7.  Only one sentence in that decision is relevant to this issue.  *See Sagittarius Broad. Corp.*, 243 A.D.2d at 326 ("[T]he first sentence of the subject clause cannot reasonably be interpreted as limited to third-party claims, particularly in view of the second portion of that clause, which clearly pertains to third-party actions, thereby rendering the first part mere surplusage were it only applicable, as defendant maintains, to third-party actions . . . .").  Without more information about the contract at issue in that case, the Court has no way to determine whether other factors, such as a failure to include notice of claim or assumption of defense provisions, contributed to that court's finding that the contract was "unmistakably clear" that first party indemnification was intended.  *See also JMP Sec. LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029, 1045 n. 8 (N.D. Cal. 2012) ("The Court can give *Sagittarius* no weight because the Court cannot discern whether the contract at issue there resembles the one here.").

    Apogee additionally cites *Banc of Am. Credit Prods., Inc. v. Guidance Enhanced Green Terrain, LLC*, No. 653011/2016, 2017 WL 3917207, at *12 (Sup. Ct. N.Y. Cnty. Sept. 7, 2017).  *See* Resp. at 7.  In that case, the New York County Supreme Court found that the contract at issue applied to first-party claims because the indemnity provision expressly reserved the rights of the plaintiff to sue the defendant, because the indemnification provision "did not include an exhaustive list of actions for which indemnification is required," and because there were no "other provisions in the servicing agreement that would be rendered meaningless if the indemnification provision is read to include any claims — intra-party or otherwise — that involve plaintiff."  *Banc of Am. Credit Prods., Inc.*, 2017 WL 3917207 at *12.  None of those factors is present here: the indemnity clause does not expressly state that it applies to first-party claims, it does include a list of actions for which indemnity is required, and the presence of notice of claim and assumption of defense provisions call into question whether the clause applies to first-party claims.

Because the Indemnity Clause in the Purchase Agreement does not unmistakably include first-party claims, Counterclaim-Defendants' motion to dismiss that claim is granted, and the claim is dismissed with prejudice.

## VI.   Clarke's Maryland Labor Law Claims Are Time-Barred

Clarke alleges that IGC violated the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501 *et seq.*, by not transferring to him the 200,000 shares of IGC stock as wages for his work as IGC's interim chief financial officer. Amend. Counterclaim ¶¶ 117–128.  IGC argues that the shares cannot be considered wages under the applicable Maryland statute and that the claim is time barred.  Mem. of Law at 22–24.

A claim for unpaid wages under the MWPCL "must be filed within three years and two weeks from the date on which the employer should have paid the wage." *Butler v. VisionAIR, Inc.*, 385 F. Supp. 2d 549, 554 (D. Md. 2005); *see also* Md. Code Ann., Lab. & Empl. § 3-507.2(a); Md. Code Ann., Cts. & Jud. Proc. § 5-101.  Clarke alleges that Mukunda promised to pay Clarke 200,000 shares "on or about April 1, 2016."  Amend. Counterclaim ¶ 48.  Clarke first filed his claim for violations of the MWPCL on April 29, 2021, *see* Compl., 21-CV-3809, Dkt. 1 ¶¶ 109–119, making the claim time barred.[23]

Clarke argues that the claim is not time barred because Mukunda ratified and acknowledged "the Share's Agreement as late as December 2018."  Resp. at 6; Amend. Counterclaim ¶¶ 69–70.  Clarke contends that Mukunda's acknowledgement of the debt and his promise to pay tolled the statute of limitations.  As discussed in section III, *supra*, under certain circumstances, the acknowledgment of a debt revives an otherwise time-barred claim under

---

[23]     IGC is also likely correct that the shares cannot be considered wages under MWPCL; because the claim is time barred, the Court need not wade into that issue.

Maryland law.  IGC argues that although acknowledgment of a debt tolls the statute of limitations in a breach of contract action, the debt acknowledgment doctrine is irrelevant to the statute of limitations under MWPCL.  Reply at 12–13.  The Court agrees.  Clarke cites no authority that explains why a common law contract doctrine should be applied to a statutory claim for wages, and the Court is aware of none.

Accordingly, because Clarke has advanced no cogent argument why the statute of limitations has not expired, Counterclaim-Defendants' motion to dismiss Clarke's Maryland labor law claim is granted, and the claim is dismissed with prejudice.

## VII.   The Declaratory Judgment Claim Is Dismissed as Duplicative

Counterclaim-Plaintiffs seek a declaratory judgment that Mukunda and IGC are liable to Apogee under the Purchase Agreement and to Clarke under the Shares Agreement.  Amend. Counterclaim ¶¶ 133–34.  "The Declaratory Judgment Act . . . vests a district court with discretion to exercise jurisdiction over a declaratory action."  *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005) (citing 28 U.S.C. § 2201(a)).  In deciding whether to entertain an action for a declaratory judgment, a district court must consider "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty."  *Id.*; *see also Cont'l Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734, 737 (2d Cir. 1992) (finding that courts must consider a declaratory judgment when "the judgment will serve a useful purpose in clarifying and settling the legal relations in issue or when it will terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding." (cleaned up)).

On the other hand, a counterclaim seeking a declaratory judgment may be dismissed if it does not broaden the scope of the dispute or if it would not present a live controversy once a counterclaim-plaintiffs' claims have been resolved on the merits.  *See Arista Recs. LLC v. Usenet.com., Inc.*, No. 07-CV-8822, 2008 WL 4974823, at *4–5 (S.D.N.Y. Nov. 24, 2008). When a party asks the Court to declare that the opposing party has breached a contract and that party "has a legal remedy for breach of contract, its cause of action for declaratory judgment should [be] dismissed."  *Ness Techs. S.A.R.L. v. Pactera Tech. Int'l Ltd.*, 173 A.D.3d 635, 636 (1st Dep't 2019); *see also Cronos Grp. Ltd. v. XComIP, LLC,* 156 A.D.3d 54, 64 (1st Dep't 2017) (holding that the claim for declaratory judgment should be dismissed because there is "an adequate legal remedy for breach of contract"); *Singer Asset Fin. Co., LLC v. Melvin*, 33 A.D.3d 355, 358 (1st Dep't 2006) ("Similarly, plaintiff may not seek a declaratory judgment when other remedies are available, such as a breach of contract action.").

Counterclaim-Plaintiffs are asking the Court to enter a declaratory judgment that IGC is liable to Apogee for breach of the Purchase Agreement and that IGC and Mukunda are liable to Clarke for breach of the Shares Agreement.  *See* Amend. Counterclaim ¶¶ 133–34.  By the end of this litigation, both breach of contract claims will have been resolved, and there will no longer be a live controversy.  *See Arista*, 2008 WL 4974823, at *4–5.  Accordingly, Counterclaim-Defendants' motion to dismiss the Counterclaim seeking a declaratory judgment is granted, and this claim is dismissed with prejudice.

## VIII.   The Amended Counterclaim Does Not Adequately Plead Consequential Damages

Apogee and Clarke allege that they are entitled to consequential damages, in the amounts of $12,000,000 for Apogee and $5,000,000 for Clarke.  *See* Amend. Counterclaim at p. 19–20. Under New York law, a party is entitled to consequential damages when "[the damages] are

reasonably foreseeable or 'within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting.'" *Judd Burstein, P.C. v. Long*, No. 15-CV-5295, 2017 WL 3535004, at *4 (S.D.N.Y. Aug. 16, 2017) (quoting *Kenford Co., Inc. v. City of Erie*, 73 N.Y.2d 312, 319, 321 (1989)). "The party breaching the contract is liable for those risks foreseen or which should have been foreseen at the time the contract was made. The breaching party need not have foreseen the breach itself, however, or the particular way the loss came about. It is only necessary that loss from a breach is foreseeable and probable." *Ashland Mgmt. Inc. v. Janien*, 82 N.Y.2d 395, 403 (1993). Moreover, "[c]onsequential damages must be proximately caused by the breach and must be proven by the party seeking them." *E. Coast Res., LLC v. Town of Hempstead*, 707 F. Supp. 2d 401, 411 (E.D.N.Y. 2010) (internal citations omitted).

The Amended Counterclaim does not plead adequately that the consequential damages being sought were reasonably foreseeable or within the contemplation of the parties when the Purchase Agreement was formed. Counterclaim-Plaintiffs claim they are entitled to consequential damages because IGC's breach of contract caused: Apogee to terminate its operations; Midtown and Clarke to be sued by their landlord for $220,000; Midtown to be expelled from the Financial Industry Regulatory Authority ("FINRA"); Clarke to lose his job; Clarke to be passed over for two other job openings; and FINRA to deny Clarke's petition to own a Regulation CF funding portal. Amend. Counterclaim ¶¶ 62–83.

All of the allegations of foreseeability of consequential damages are conclusory. For example, according to the Counterclaim, but for IGC's failure to perform as required by the Purchase Agreement, "neither Midtown nor Clarke would have been sued on the commercial lease." *Id.* ¶ 77. The Counterclaim also alleges that, but for IGC's failure to perform as required

by the Purchase Agreement, "Midtown would have stayed in business and Clarke would have continued his career as the principal of a broker/dealer." *Id.* ¶¶ 77–78.  But simply stating that A caused B is insufficient for the Court to draw a plausible inference that A, in fact, caused B.

Moreover, the Counterclaim does not include any allegations that would bridge the significant gap in time between the alleged breaches and the purported consequences of those breaches.  Counterclaim-Plaintiffs allege that IGC and Mukunda breached the Purchase Agreement and the Shares Agreement in 2014 and 2015.  *Id.* ¶¶ 30–39.  Midtown was not sued by its landlord until December 17, 2019, more than five years after the alleged breach of the Purchase Agreement.  *Id.* ¶ 74.  Similarly, Apogee did not cease operations and Clarke did not lose his job until approximately five years after the alleged breaches.  *Id.* ¶¶ 62–64, 79–80.  Counterclaim-Plaintiffs do not plead any facts from which the Court could plausibly infer that those possibilities were in the minds of IGC and Mukunda at the time the Purchase Agreement was negotiated or executed.

Counterclaim-Plaintiffs argue that the Court should not consider whether consequential damages are appropriate on a motion to dismiss, because the "amount of damages is a matter of proof at trial, not a matter of pleading," *see* Resp. at 7–8, and cite *E. Materials Corp. v. Mitsubishi Plastics Composites Am., Inc.*, 307 F. Supp. 3d 52, 61 (E.D.N.Y. 2018), to support that contention.  But in that case, the court did not deny the motion to dismiss the claim for consequential damages because of the posture of the case.  The court denied the motion because the plaintiff had adequately alleged that the defendant was aware there might be consequential damages that ensued from the alleged breach.  *E. Materials Corp*, 307 F. Supp. 3d at 61.  The decision went on to state that "consequential damages are recoverable if the defendant knows or has reason to know the circumstances which will give rise to such damages." *Id.* (citations

omitted).  Unlike in *E. Materials Corp.*, all of Apogee's allegations in support of its contention

that it is entitled to consequential damages are conclusory.[24]  Accordingly, without any

allegations that go to whether IGC and Mukunda were aware of special circumstances that would

give rise to consequential damages, Apogee and Clarke have not stated a claim that they are

entitled to those damages.

Accordingly, IGC's motion to dismiss Apogee and Clarke's claim of entitlement to

consequential damages is granted.  Although a steep hill to climb, Apogee and Clarke may be

able to plead sufficient facts in a second amended counterclaim that would support their

entitlement to consequential damages.[25]  Accordingly, Apogee and Clarke may seek leave to file

a second amended counterclaim that includes additional factual allegations to support their

contention that they are entitled to consequential damages.

## CONCLUSION

For the foregoing reasons, IGC and Mukunda's motion to dismiss is GRANTED in part

and DENIED in part.  By no later than **Friday, March 18, 2022**, Apogee and Clarke may move,

---

[24]     Apogee cites one other case to support its argument.  *See* Resp. at 8 (citing *Optima Media Grp. Ltd. v. Bloomberg L.P.*, No. 17-CV-01898, 2021 WL 1941878, at *18 (S.D.N.Y. May 14, 2021)).  Although that case lays out the relevant legal standards for general damages and consequential damages in detail, it says nothing about whether *vel non* a court may dismiss a party's claim for consequential damages on a motion to dismiss.

Moreover, courts often dismiss a party's claim for consequential damages on a motion to dismiss.  *See, e.g.*, *Yenrab, Inc. v. 794 Linden Realty, LLC*, 68 A.D.3d 755, 759 (2d Dep't 2009) (citation omitted) (holding that the lower court should have dismissed the claim for consequential damages at the motion to dismiss stage because there were no allegations that the damages were "within the contemplation of the parties at the time the contract was made"); *Tevdorachvili v. Chase Manhattan Bank*, 103 F. Supp. 2d 632, 641–42 (E.D.N.Y. 2000) (dismissing a request for consequential damages on a motion to dismiss because plaintiff "pleaded no facts suggesting . . . the damages alleged were within the contemplation of the parties at the time their contract was formed.").

[25]     Counterclaim-Defendants did not move to dismiss Counterclaim-Plaintiffs' claim for consequential damages in their first motion to dismiss.  *See* Not. of Mot., Dkt. 25.  Because the motion to dismiss currently before the Court is the first time that Counterclaim-Defendants have moved to dismiss the request for consequential damages, *see* Not. of Mot., Dkt. 25, the Court finds it appropriate to afford Counterclaim-Plaintiffs one last opportunity to amend.

in a letter motion not to exceed five pages, for leave to amend their counterclaim in accordance with this Opinion.  Any such motion must include a proposed second amended counterclaim as exhibits in both clean and redlined forms.[26]  Any response in opposition, not to exceed five pages, is due no later than **Friday, April 1, 2022**.  Any reply in support, not to exceed two pages, is due no later than **Friday, April 8, 2022**.

If Apogee and Clarke do not move for leave to amend their counterclaim, Counterclaim-Defendants must answer the claims remaining in the Amended Counterclaim by **Friday, April 1, 2022.**

The stay of discovery in this matter, *see* Endorsement, Dkt. 43, is lifted.  By no later than **Friday, March 23, 2022**, the parties must file a joint letter with (1) a brief description of the status of discovery and of any additional discovery that needs to be completed; (2) proposed fact discovery and expert discovery deadlines; (3) a statement describing the status of any settlement discussions and whether the parties would like a settlement conference with their assigned Magistrate Judge; and (4) any other information that the parties believe may assist the Court in advancing the case to settlement or trial.

The Clerk of Court is respectfully directed to close the open motion at docket entry 36.

**SO ORDERED.**

Date:  **March 4, 2022**
      **New York, New York**

**VALERIE CAPRONI**
**United States District Judge**

---

[26]     In any proposed second amended counterclaim, Apogee and Clarke must remove the causes of action that have been dismissed with prejudice in this Opinion, and they may not add new parties or new causes of action.  Any new allegations must pertain only to Mukunda's alleged personal liability under an alter-ego theory and to consequential damages.